UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| WILLIAM HORNER, | ) |
| Plaintiff, | ) 2:24-CV-175-DCLC-CRW |
| v. | ) |
| CUYAHOGA COUNTY, et al., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff William Horner brings this action against 13 defendants following his divorce proceeding in Ohio state court and several related civil and criminal actions during which Plaintiff was found to be a vexatious litigator and was indicted after conducting a cyber-attack on the Cuyahoga County Courthouse. This Order addresses (1) Cuyahoga County, Judge Tonya Jones, and Judge Brendan Sheehan's Motion to Dismiss [Doc. 21]; (2) Governor Mike DeWine's Motion to Dismiss [Doc. 28]; and (3) Hamblen County and the Hamblen County Sheriff's Department's Motion to Dismiss [Doc. 30]. Plaintiff responded in opposition to each motion [Docs. 34, 44, 52] and Defendants replied [Docs. 40, 46, 56]. These matters are now ripe for resolution. For the reasons below, each Defendant's Motion to Dismiss [Docs. 21, 28, 30] is **GRANTED**.

**I.  BACKGROUND**

This matter stems from Plaintiff's divorce proceedings with Allison Stark and his conduct both during and after the state court proceeding. Stark filed for divorce from Plaintiff on August 24, 2020. *See Horner v. Horner*, Cuyahoga C.P. No. DR-20-382383 (Aug. 24, 2020).[1] Plaintiff

---

[1] This Court may take notice and rely on filings in the Cuyahoga County Court of Common Pleas because they are public record, and these Ohio state court matters form the central basis of Plaintiff's claims. *See Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011)

Case 2:24-cv-00175-DCLC-CRW   Document 86   Filed 09/26/25   Page 1 of 17
PageID #: 532

was initially represented by counsel, but his counsel sought to withdraw in January 2021. *Id.* (Jan. 13, 2021). In June 2021, the trial court entered a notice that trial would commence on November 18, 2021. *Id.* (June 25, 2021). The trial occurred, Plaintiff failed to appear and based on Stark's testimony and the evidence presented at trial, the trial court entered a divorce decree granting Stark a divorce from Plaintiff and other forms of relief. *Id.* (Nov. 18, 2021). Plaintiff appealed the trial court's divorce decree, but on July 7, 2022, the Eighth Appellate District of the Court of Appeals of Ohio affirmed the trial court's judgment reasoning "[a]ppellant voluntarily chose to not participate in many of the trial court proceedings, including court-ordered FES and the trial." *Id.* (Dec. 7, 2021); *Horner v. Stark*, 8th Dist. Cuyohoga No. 111085, CA-22-111968, ¶ 38.

Shortly thereafter, in August 2022, in a separate but related matter to the divorce proceeding, Stark filed for a Civil Protection Order against Plaintiff and a hearing was set for September 1, 2022. *See Stark v. Horner*, Cuyahoga C.P. No. DV-22-391235. Before the hearing began, Plaintiff apparently launched a self-proclaimed "whitehat 'email bomb' DOS attack on the Cuyahoga County Courthouse" in an attempt to prevent the hearing from proceeding.[2] Later that day after Plaintiff's cyber-attack, Judge Jones sua sponte entered an order in the divorce proceeding on September 1, 2022 stating:

> IT IS ORDERED THAT RESPONDENT WILLIAM EASTON HORNER IS ENJOINED FROM COMMITTING ANY OF THE FOLLOWING ACTS: 1 – ENTERING THE PREMISES OF THE CUYAHOGA COUNTY COURT OF COMMON PLEAS AT 1 WEST LAKESIDE AVE, 2 – THREATENING ASSAULTING, ABUSING, HARASSING OR INTERFERING WITH THE CUYAHOGA COUNTY COURT OF COMMON PLEAS PERSONNEL IN ANY

---

("In addition to the allegations in the complaint, [we] may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice.") (citations omitted).

[2]  Defendants attached the article Plaintiff authored detailing his motives for the cyber-attack as Exhibit C to their motion to dismiss [Doc. 22-3] which was filed with the Cuyahoga County Court of Common Pleas as Exhibit "BB" to the Complaint in Case No. CV-22-969917. *See* [Doc. 22, pg. 3 n.5].

MANNER AND 3 – EMAILING, CONTACTING, OR OTHERWISE COMMUNICATING WITH THE COURT, INCLUDING ITS STAFF AND EMPLOYEES, OUTSIDE OF ANY LEGAL PROCEEDINGS. IT IS FURTHER ORDERED THAT ALL HEARINGS IN THE ABOVE CAPTIONED CASE AND ANY OTHER MATTER TO WHICH RESPONDENT WILLIAM EASTON HORNER IS A PARTY BEFORE THIS COURT SHALL BE CONDUCTED BY REMOTE VIDEOCONFERENCE TECHNOLOGY, IE. ZOOM.

*Horner v. Horner*, Cuyahoga C.P. No. DR-20-382383 (Sept. 1, 2022).

In a separate civil action filed in October 2022, Allison Stark and her mother, Catherine Stark, (collectively, the "Starks") sought to declare Plaintiff a vexatious litigator, among other claims, after he filed several suits against them alleging fraud, theft, harassment, and a conspiracy with the FBI, local governments, judges, and hospitals. *See Stark v. Horner*, Cuyahoga C.P. No. CV-22-969917 (Oct. 12, 2022). Judge Sheehan was assigned to the case, and on August 2, 2023, he found Plaintiff to be a vexatious litigator based on the four lawsuits[3] brought by Plaintiff which he described as "duplicative, frivolous, abusive, and lacking legal grounds." *Stark*, CV-22-969917, at pg. 4 (Aug. 2, 2023); [Doc. 29-1, pg. 5]. Judge Sheehan opined that Plaintiff "repeatedly asserts the same narratives across cases, fails to conform to court rules, fails to support his claims with competent evidence or argument, and resorts to threats and harassment of the litigants and courts."[4] *Stark*, CV-22-969917, at pg. 4 (Aug. 2, 2023); [Doc. 29-1, pg. 5].

---

[3] *See Horner v. Stark*, Cuyahoga C.P. No. CV-22-962585; *Horner v. Stark, et al.*, Cuyahoga C.P. No. CV-22-963377; *Horner v. Stark, et al.*, Cuyahoga C.P. No. CV-22-965121; *Horner v. Stark, et al.*, Cuyahoga C.P. No. CV-22-971495.

[4] Aside from the four lawsuits brought by Plaintiff that Judge Sheehan considered in making his determination, he noted that the Cleveland Clinic, involved in one of Plaintiff's lawsuits, was forced to obtain a civil stalking protection order after Plaintiff threatened to hack into its information system to obtain discovery. *Stark*, CV-22-969917, at pg. 7 (Aug. 2, 2023); *see Cleveland Clinic v. Horner*, Cuyahoga C.P. No. CV-22-970761. Judge Sheehan also noted that the Starks' counsel also had to seek a civil stalking protection order against Plaintiff after he attacked their firm's computer system with spam emails. *See Stark*, CV-22-969917, at pg. 7 (Aug. 2, 2023); *Seeley Savidge Ebert & Gourash Co. LPA v. Horner*, Cuyahoga C.P. No. CV-23-974806.

Judge Sheehan also found that Plaintiff defamed the Starks by publishing statements online that they had "engaged in criminal activity including: kidnapping, collusion to fabricate or destroy evidence, and hacking cell phones or computers." *Id.* at pg. 9. The state court ordered Plaintiff to remove all content created or posted by him alleging that the Starks committed or were continuing to commit criminal conduct. *Id.*

As for the criminal matters that are central to Plaintiff's Complaint, on November 2, 2022, after he launched the cyber-attack on the Cuyahoga County Courthouse, a state grand jury returned an indictment charging Plaintiff with retaliation (Ohio Rev. Code § 2921.05(A)), disrupting public services (Ohio Rev. Code § 2909.04(B)), and telecommunications harassment (Ohio Rev. Code § 2917.21(A)(7)). *See Ohio v. Horner*, Cuyahoga C.P. No. CR-22-675557 (Nov. 2, 2022). On September 22, 2023, a motion to dismiss was filed and the judge granted its dismissal noting that the case had been reindicted. *See id.* (Sept. 22, 2023). Plaintiff had been reindicted on April 18, 2023 on the same counts from the original case (CR-22-675557) and two additional counts for retaliation and telecommunications harassment. *See Ohio v. Horner*, Cuyahoga C.P. No. CR-23-680296-A (Apr. 18, 2023).

In his Complaint in this case, Plaintiff claims that he was arrested by officers of the Hamblen County Sheriff's Department and the Morristown Police Department on September 21, 2023 pursuant to an allegedly invalid capias issued in Cuyahoga County, Ohio. [Doc. 1, ¶ 16]. Plaintiff alleges that Judge Sheehan had "neglected" to recall the capias "despite the underlying case being resolved, resulting in [Plaintiff's] unlawful arrest." *Id.* Plaintiff was released on bond after the General Sessions Court of Hamblen County allegedly "found insufficient information to support the extradition request." *Id.* ¶ 17. Three months later, on January 31, 2024, Plaintiff was re-incarcerated because he alleges that Officer Pete Shockley of the Morristown Police Department

testified falsely to the Hamblen County Court that Plaintiff "had made incriminating statements about his lawyer." *Id.* ¶ 18. Plaintiff claims that "[t]his untruthful testimony played a pivotal role in convincing the court to reincarcerate" Plaintiff for over 30 days in the Hamblen County Jail. *Id.*

Plaintiff brings claims against Defendants related to his arrest and subsequent incarceration under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments and other federal and state-law causes of action. Plaintiff alleges that Governor DeWine is liable for Plaintiff's "unlawful extradition and detention" because the Governor issued the Governor's Warrant "asserting that Plaintiff was present in Ohio when the alleged offenses occurred, even though this was not true." *Id.* ¶ 70. Plaintiff also brings claims (unrelated to his arrest) against Judge Jones and Judge Sheehan for violating his First Amendment right to free speech because of their "unconstitutional orders" "prohibiting him from maintaining a digital space that shared public opinion and information." *Id.* ¶ 32. A summary of his various causes of action follows:

| Count | Cause of Action | Defendants |
|---|---|---|
| 1 | Violation of the Fourth Amendment – Unlawful Search and Seizure (42 U.S.C. § 1983) | Pete Shockley, Bradley Gilmer, Morristown Police Department, and Hamblen County Sheriff's Department |
| 2 | Violation of Due Process – Fourteenth Amendment (42 U.S.C. § 1983) | Judge Sheehan and Governor DeWine |
| 3 | First Amendment Violation – Prior Restraint (42 U.S.C. § 1983) | Judge Sheehan and Judge Jones |
| 4 | Monell Claim – Unconstitutional Policies or Customs (42 U.S.C. § 1983) | City of Morristown and Hamblen County |
| 5 | Failure to Train and Supervise (42 U.S.C. § 1983) | City of Morristown, Morristown Police Department, Hamblen County, and Hamblen County Sheriff's Department |
| 6 | Bivens Claim – Fourth Amendment Violation (Unlawful Seizure) | Matti Casi and U.S. Marshals Service |
| 7 | Perjury | Pete Shockley |
| 8 | State-Created Danger (42 U.S.C. § 1983) | Morristown Police Department, Hamblen County Sheriff's Department, |

| Count | Cause of Action | Defendants |
|---|---|---|
| | | City of Morristown, and Hamblen County |
| 9 | Deliberate Indifference (42 U.S.C. § 1983) | City of Morristown, Hamblen County, Morristown Police Department, and Hamblen County Sheriff's Department |
| 10 | Intentional Infliction of Emotional Distress | All Defendants |
| 11 | Misrepresentation/Fraud (42 U.S.C. § 1983) | Governor DeWine |
| 12 | Negligence/Gross Negligence | Morristown Police Department, Hamblen County Sheriff's Department, City of Morristown, and Hamblen County |
| 13 | Abuse of Process | All Defendants |
| 14 | Trespass to Chattels | All Defendants |
| 15 | Malicious Prosecution | All Defendants |

This Order addresses (1) Cuyahoga County, Judge Tonya Jones, and Judge Brendan Sheehan's Motion to Dismiss [Doc. 21]; (2) Governor Mike DeWine's Motion to Dismiss [Doc. 28]; and (3) Hamblen County and Hamblen County Sheriff's Department's Motion to Dismiss [Doc. 30]. Cuyahoga County, Judge Jones, Judge Sheehan, Governor DeWine, and the Hamblen County Sheriff's Department move to dismiss all claims against them. Hamblen County moves to dismiss the state-created danger claim (Count 8) and all the state-law claims (Counts 10, 12–15) against it.

## II.    LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing how the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need not contain detailed factual allegations, but it must include "more than labels, conclusions, and formulaic recitations of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A motion to dismiss under Rule 12(b)(6) requires courts to construe the complaint in the light most favorable to the plaintiff and accept its factual allegations as true. *Meador v. Cabinet for Hum. Res.*, 902 F.2d 474, 475 (6th Cir. 1990). To survive dismissal, the plaintiff must allege facts sufficient "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. ANALYSIS

### a. Cuyahoga County

Plaintiff asserts claims against Cuyahoga County, Ohio, an out of state governmental entity. Plaintiff appears to be challenging the policies of Cuyahoga County because "[i]t is responsible for the actions of its judiciary and law enforcement, including issuing and maintaining arrest warrants and ensuring their proper recall." [Doc. 1, ¶ 2]. Cuyahoga County argues it does not have sufficient "minimum contacts" with the State of Tennessee to subject them to in personam jurisdiction. *See* [Doc. 22, pgs. 7–17].

"The Tennessee long-arm statute, Tenn. Code Ann. § 20-2-214(a)(6), has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause." *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 455 (6th Cir. 1993). Whether the Court possesses personal jurisdiction depends on whether exercising such jurisdiction would be consistent with federal due process requirements. *Id*. Under the due process clause, "courts may exercise personal jurisdiction over out-of-state defendants only where those defendants have 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Carbone v. Kaal*, 140 F.4th 805, 809–10 (6th Cir. 2025) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). These minimum contacts implicate two types of

jurisdictions: general and specific. General is not at issue here as that arises when "a defendant's contacts with the forum state are of such a 'continuous and systematic' nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Third Nat'l Bank v. Wedge Grp., Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). Plaintiff does not allege that in the slightest. Specific jurisdiction, on the other hand, exists only when a claim "arises out of or relates to a defendant's contacts in the forum state." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012). The Sixth Circuit employs a three-factor test in addressing specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Means v. United States Conf. Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016) (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Plaintiff has failed to allege any basis for this court to exercise jurisdiction over Cuyahoga County, Ohio. The only allegations in this Complaint relating to Cayahoga County, Ohio relate to the actions of Judge Brendan Sheehan who, Plaintiff claims, should have recalled a capias that had been issued by the court. [Doc. 1, ¶ 9]. He fails to allege that Cayahoga County took actions that had a substantial enough connection with Tennessee to make the exercise of jurisdiction over it reasonable. The Court agrees with the County. This Court has no personal jurisdiction over Cuyahoga County, Ohio. Accordingly, Plaintiff's claims against Cuyahoga County are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

8

Case 2:24-cv-00175-DCLC-CRW   Document 86   Filed 09/26/25   Page 8 of 17
PageID #: 539

### b. Judicial Defendants – Judge Jones and Judge Sheehan

Plaintiff brings claims against two Ohio state court judges in the Cuyahoga County – Judge Jones, who presided over his divorce proceeding (DR-20-382383), and Judge Sheehan, who presided over a civil suit (CV-22-969917) and the original criminal matter against Plaintiff (CR-22-675557) (the "Judicial Defendants"). The Judicial Defendants initially contend that these claims should be dismissed because the Court lacks personal jurisdiction over them, but the Court need not address personal jurisdiction because as the Judicial Defendants also argue, they are immune from liability for acts taken in their official judicial capacity.[5] Further, Defendants contend that Plaintiff's claim that the Judicial Defendants violated his First Amendment right to free speech with their "unconstitutional orders" is barred by the *Rooker-Feldman* doctrine. [Doc. 1, ¶ 32]. The Court will address each in turn.

### i. Judicial Immunity

Judges are generally entitled to absolute judicial immunity from suit for monetary damages in both their individual and official capacities. *See Jackson v. Canady*, No. 22-2089, 2023 WL 6205622, at *2 (6th Cir. 2023); *Dixon v. Clem,* 492 F.3d 665, 674 (6th Cir. 2007); *DePiero v. City of Macedonia,* 180 F.3d 770, 783 (6th Cir. 1999). Immunity does not extend, however, to judges who act (1) in a non-judicial capacity or (2) in the complete absence of all jurisdiction. *Canady*, 2023 WL 6205622, at *2 (citing *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991)). "[W]hether an act

---

[5] Although the Judicial Defendants brought their motion to dismiss under Rule 12(b)(2) for a lack of personal jurisdiction [Doc. 21], judicial immunity is not a jurisdictional issue and is typically analyzed in the context of a Rule 12(b)(6) motion. *See Leech v. DeWeese*, 689 F.3d 538, 541 (6th Cir. 2012) (analyzing "[t]he availability of absolute judicial immunity in the context of a Rule 12(b)(6) motion to dismiss"); *see also Harris v. Sec'y of State*, No. 23-5833, 2024 WL 4225713, at *3 (6th Cir. May 29, 2024) (noting that "judicial immunity is not a jurisdictional doctrine that deprives a court of the power to adjudicate a claim"). The Court will therefore construe the Judicial Defendants' motion to dismiss under Rule 12(b)(6).

by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). The scope of a judge's jurisdiction is construed broadly and "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Id.*

Here, Plaintiff's allegations against the Judicial Defendants all pertain to acts normally carried out by judges in their judicial capacities and within their respective jurisdictions. Judge Jones presided over Plaintiff's divorce proceeding and issued an order preventing Plaintiff from further harassing the court and its staff after he launched a cyber-attack against the court. *See Horner v. Horner*, Cuyahoga C.P. No. DR-20-382383 (Sept. 1, 2022). Judges have the right to exercise and maintain control over their courtroom. *See Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir.1994) ("A judge acts in his judicial capacity when he exercises control over his courtroom."). The same extends to enjoining a party from attacking the court system itself. While Judge Jones enjoined Plaintiff from harassing court staff, she permitted him to contact its employees concerning "any legal proceedings." *Horner v. Horner*, Cuyahoga C.P. No. DR-20-382383 (Sept. 1, 2022). Moreover, Judge Jones did not deprive Plaintiff from access to the courts as she ordered the hearings to be conducted remotely.

Judge Sheehan presided over a civil action against Plaintiff in which he declared Plaintiff a vexatious litigant and found him liable for defamation ordering Plaintiff to remove all defamatory statements from various internet sites. *See Stark v. Horner*, Cuyahoga C.P. No. CV-22-969917; [Doc. 29-1]. Judge Sheehan also presided over the original criminal matter against Plaintiff in which he issued a capias. *See Ohio v. Horner*, Cuyahoga C.P. No. CR-22-675557. Each of Judge

Sheehan's acts were taken in his judicial capacity and were within his jurisdiction. *See, e.g.*, *Norfleet v. Renner*, 924 F.3d 317, 320 (6th Cir. 2019) ("Issuing an arrest warrant is a judicial act."). Plaintiff contends that the capias was "invalid," but at the time of his arrest, on *September 21, 2022*, the criminal matter was active. [Doc. 1, ¶ 16]; *see Horner*, Cuyahoga C.P. No. CR-22-675557. The original matter was dismissed *the next day* noting that the matter had been reindicted. *See Horner*, Cuyahoga C.P. No. CR-22-675557 (Sept. 22, 2023). Furthermore, even if the warrant were issued in error, judicial immunity would still apply as "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump*, 435 U.S. at 362.

Judicial immunity, however, "does not preclude suit for prospective relief such as an injunction," but Plaintiff fails to allege facts to plausibly demonstrate entitlement to prospective relief. *Berger v. Cuyahoga Cnty. Bar Ass'n*, 983 F.2d 718, 721 (6th Cir. 1993). The Judicial Defendants are therefore entitled to absolute judicial immunity and all claims against them are **DISMISSED**.

    ii.  *Rooker-Feldman* **Doctrine**

Plaintiff claims that the Judicial Defendants issued unconstitutional orders violating his First Amendment right to free speech and requests that "these injunctions and unlawful restraining orders be enjoined." [Doc. 1, ¶ 35]. Federal district courts, however, "do not stand as appellate courts for decisions of state courts." *Hall v. Callahan*, 727 F.3d 450, 453 (6th Cir. 2013) (citing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983)). "The *Rooker–Feldman* doctrine prevents a federal court from exercising jurisdiction over a claim alleging error in a state court decision." *Id.* (citations omitted). "Federal courts' 'authority to review a state court's judgment' is vested 'solely in [the Supreme] Court.'"

*Id.* (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 292 (2005)).  Plaintiff's claim against the Judicial Defendants (Count 3) is barred by the *Rooker-Feldman* doctrine and is **DISMISSED**.

### c. Governor Mike DeWine

Plaintiff's claims against Governor DeWine arise solely out of his issuance of the Governor's Warrant from the State of Ohio which Plaintiff contends "falsely certified Plaintiff was present in Ohio when the alleged offenses occurred and was a fugitive from justice." [Doc. 1, ¶ 28].  A state governor enjoys quasi-judicial immunity for the issuance of an extradition warrant. *Ortiz v. Karnes*, No. 206-CV-0562, 2007 WL 1160326, at *1 (S.D. Ohio Apr. 17, 2007) (finding the governor had absolute immunity from suit while performing the duties of his office with respect to extradition proceedings.).  "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune."  *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994).  "[E]nforcing or executing a court order is intrinsically associated with a judicial proceeding" for which quasi-judicial immunity is available.  *Id.*; *see Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988) (finding that the issuance of an arrest warrant is a "truly judicial act").  Under Ohio law, "[w]henever the governor demands a person charged with crime, with escaping from confinement, or with breaking the terms of the person's bail or parole … the governor shall issue a warrant under the seal of this state, to an agent, commanding the agent to receive the person so charged and convey that person to the proper officer of the county in which the offense was committed."  Ohio Rev. Code § 2963.20.  Governor DeWine did just that.  He followed Ohio law in issuing the Governor's Warrant.  He therefore enjoys absolute immunity for the performance of this executive function.

Governor DeWine also enjoys sovereign immunity under the Eleventh Amendment. The Eleventh Amendment to the United States Constitution bars actions "against states unless they consent to be sued or Congress, pursuant to a valid exercise of its power, unequivocally expresses its intent to abrogate sovereign immunity." *Ashford v. Univ. of Mich.*, 89 F.4th 960, 969 (6th Cir. 2024). That bar also applies to "state officers acting in their official capacity" and "entities acting on behalf of the state." *Id.* The State of Ohio has not waived its Eleventh Amendment immunity in federal courts. *See Johns v. Supreme Court of Ohio,* 753 F.2d 524 (6th Cir. 1985). Governor DeWine was acting in his official capacity when he issued the extradition warrant; therefore, Plaintiff's claims against him are barred by the Eleventh Amendment.

Plaintiff's claims against Governor DeWine are therefore **DISMISSED**.

### d. Hamblen County Sheriff's Department

Plaintiff brings claims against the Hamblen County Sheriff's Department. Hamblen County Sheriff's Department contends that it is not a suable entity. *See* [Doc. 1, ¶¶ 21–25, 41–45, 56–68, 73–88]; [Doc. 31, pgs. 4–5]. Plaintiff concedes in his response that "sheriff's departments are generally not independent entities amenable to suit under Tennessee law." [Doc. 52, pg. 1]. The Court agrees that sheriff's departments are not suable entities. *See Starnes v. Bedford Cnty./Jail/Sheriff Dep't*, No. 4:16-CV-22-CLC-CHS, 2016 WL 1239262, at *2 (E.D. Tenn. Mar. 29, 2016) (holding that Bedford County Sheriff's Department was neither a "person" nor political or corporate body for § 1983 purposes) (collecting cases); *see also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint."); *Walker v. Union Cnty*, No. CIV.A. 13-102-DLB, 2013 WL 1912936, at *1 (E.D. Tenn. May 8, 2013); *Mathes v. Metropolitan Gov't of Nashville, et al.*, No. 3:10-cv-0496, 2010 WL 3341889, at *1–2

(M.D. Tenn. 2010). Because Hamblen County Sheriff's Department is not a suable entity, Plaintiff's claims against it are **DISMISSED WITH PREJUDICE.**

e. **Hamblen County, Tennessee**

In County Eight, Plaintiff has alleged that Defendant Hamblen County created a danger which Defendant Hamblen County contends that Plaintiff's state-created danger claim (Count 8) and all the state-law claims (Counts 10, 12–15) against it should be dismissed for failure to state a claim under Rule 12(b)(6). For the following reasons, the Court agrees and Defendant Hamblen County's motion is **GRANTED**.

i. **State-Created Danger Claim**

The Supreme Court has held that the Due Process Clause generally does not provide individuals with an affirmative right to state protection. *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 198 (1989). While "[a] State may, through its courts and legislatures, impose such affirmative duties of care and protection upon its agents as it wishes," the Court has reasoned that such duties will not be "thrust upon them by this Court's expansion of the Due Process Clause of the Fourteenth Amendment." *Id.* at 202–03. Since *DeShaney*, the Sixth Circuit has recognized two exceptions in which "state actors have an affirmative duty of care and protection: (1) the 'special relationship' exception, and (2) the state-created danger exception." *Culp v. Rutledge*, 343 F. App'x 128, 133–34 (6th Cir. 2009). A state actor can be held responsible for an injury committed by a private person under the state-created danger theory when:

> (1) an affirmative act by the governmental actor either created or increased the risk that the plaintiff would be exposed to the injurious conduct of the private person;
> (2) the governmental actor's act especially endangered the plaintiff or a small class of which the plaintiff was a member; and
> (3) the governmental actor had the requisite degree of culpability.

*Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Ed.*, 542 F.3d 529, 534 (6th Cir. 2008).

Plaintiff claims that Hamblen County violated his Fourteenth Amendment rights under the state-created danger theory of liability by "arresting and detaining Plaintiff in Hamblen County Jail, a facility with documented unconstitutional conditions." [Doc. 1, ¶ 57]. Plaintiff alleges that Hamblen County "placed Plaintiff in this dangerous environment, exposing him to substantial risks without justification or safeguards" as "[t]he Hamblen County Jail has been decertified and faces numerous lawsuits regarding its failure to provide humane conditions, including overcrowding, lack of medical care, and unsanitary living environments." *Id.* ¶ 58.

Hamblen County contends [Doc. 31, pgs. 5–6], and the Court agrees, that at the outset Plaintiff has failed to allege any facts that he suffered "injury committed by a private person." *Hunt*, 542 F.3d at 535; *see, e.g.*, *Est. of Barnwell by S.C.B. v. Grigsby*, 681 F. App'x 435, 443 (6th Cir. 2017) (finding that the plaintiff "suffered harm at the hands of government defendants—the officers and paramedics—*not* private actors, obviating the state-created-danger theory of liability"). The Court need not consider the remaining factors because at most, Plaintiff has alleged an injury or threat of an injury by the County – not a private person. The state-created danger claim against Hamblen County (Count 8) is therefore **DISMISSED** for failure to state a claim.

> ii.  **State-Law Claims**

Plaintiff brings several state-law claims (Counts 10, 12–15) against Hamblen County. [Doc. 1, ¶¶ 65–68, 73–88]. Hamblen County's liability for torts committed by its employees and agents is governed by the Tennessee Governmental Tort Liability Act ("TGTLA"). Tenn. Code Ann. § 29–20–101 et seq. The TGTLA codifies Tennessee's common-law rule of sovereign immunity and "provides that '[e]xcept as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result' from the exercise

of government duties." *Johnson v. City of Memphis*, 617 F.3d 864, 871–72 (6th Cir. 2010) (citing Tenn. Code Ann. § 29–20–201(a)). The TGTLA further provides that:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment *except* if the injury arises out of:
> …
> (2) False imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of privacy rights, or ***civil rights***.

Tenn. Code Ann. § 29–20–205(2) (emphasis added). "TGTLA's 'civil rights' exception has been construed to include claims arising under 42 U.S.C. § 1983 and the United States Constitution." *Johnson*, 617 F.3d at 872.

As Hamblen County contends [Doc. 31, pgs. 7–8; Doc. 56, pgs. 3–5], all of Plaintiff's state-law claims arise out of the same facts and circumstances as his civil rights claims under 42 U.S.C. § 1983. *See Johnson*, 617 F.3d at 872 (affirming the district court's finding that because the "[p]laintiff's claims against the [city government] are in essence claims for violation of [plaintiff's] constitutional rights," the claims "fell under the 'civil rights' exception, and that the [city government] is therefore immune under the TGTLA"). Hamblen County's alleged torts were committed in the context of Plaintiff's claims for violations of his civil rights and constitutional rights; therefore, the Court finds that these claims fall under the civil rights exception to the limited waiver of immunity under the TGTLA.[6] Plaintiff's claims, Counts 10 and 12–15, against Hamblen County are **DISMISSED** for failure to state a claim.

---

[6] Although moot given these claims are dismissed, Hamblen County contends, and Plaintiff concedes, that Plaintiff's gross negligence claim (Count 12) must be dismissed because under the TGTLA, immunity for governmental entities is not removed for acts of gross negligence or recklessness. [Doc. 1, ¶¶ 73–76; Doc. 31, pgs. 8–9; Doc. 52, pg. 3; Doc. 56, pg. 6]; *see Lawson v. Hawkins County*, 661 S.W.3d 54 (Tenn. 2023). Likewise, Plaintiff acknowledged that his claims for intentional torts – intentional infliction of emotional distress, abuse of process, malicious prosecution, and trespass to chattels – must be dismissed as Tennessee retains immunity under the

## IV. CONCLUSION

For these reasons, each Defendant's Motion to Dismiss [Docs. 21, 28, 30] is **GRANTED**. All claims against Cuyahoga County are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction. All claims against the Judicial Defendants, Governor DeWine, and the Hamblen County Sheriff's Department, and Counts 8, 10, and 12–15 against Hamblen County are **DISMISSED WITH PREJUDICE** for failure to state a claim under Rule 12(b)(6).

SO ORDERED:

                                          s/Clifton L. Corker
                                          United States District Judge

---

TGTLA intentional tort exception. *See* Tenn. Code Ann. § 20-29-205(2); [Doc. 1, ¶¶ 65–63, 77–88; Doc. 31, pgs. 9–10; Doc. 52, pg. 3; Doc. 56, pg. 7].